## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6867 | **DATE** | 7/2/2002 |
| **CASE TITLE** | A.D. Brewer vs. Massanari | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons stated in the attached Memorandum Opinion and Order, plaintiff's motion for summary judgment [12-1] is granted and defendant's motion for summary judgment [13-1] is denied. This case is reversed and remanded to the Commissioner for further proceedings consistent with this opinion. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

number of notices

JUL 0 2 2002
date docketed

docketing deputy initials

7/2/2002
date mailed notice

KF
mailing deputy initials

**Document Number**

15

KF

courtroom deputy's initials

CLERK, U.S. DISTRICT COURT
02 JUL -2 PM 2: 45

10   Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| A. D. BREWER | ) |
| Plaintiff, | ) |
| v. | ) No. 01 C 6867 |
| LARRY G. MASSANARI, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) Mag. Judge Mason |
| Defendant. | ) |

**DOCKETED**

JUL 0 2 2002

### MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

The plaintiff, A.D. Brewer [1] has brought a motion for summary judgment

seeking judicial review of the final decision of the Commissioner of Social

Security[2], who denied Brewer's claim for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C.

§§ 416(i), 423(d), 1382(c). Plaintiff now appeals that decision in federal court as

permitted by 42 U.S.C. §§ 405 (g), 1383(c)(3), which grants federal courts the

power to review the Social Security Commissioner's final decision. Before the

Court is Brewer's motion for summary judgment. For the following reasons we

reverse the decision of the Administrative Law Judge ("ALJ") that plaintiff was not

disabled because he could perform his past relevant work as a machine oiler,

and we remand this case for further factual development and analysis.

---

[1] We were unable to locate within the record plaintiff's entire first name.
[2] At the time this matter was filed, the Commissioner of Social Security was J. Robert Brown.

I. Procedural history

Brewer filed for DIB and SSI on October 14, 1997, alleging that he was disabled because he had folliculitis[3] on the back of his neck, hypertension and asthma. (R. 23, 80-82, 86, 96, 173-76). While the actual date that plaintiff claims his disability began varies throughout the record, his final position and the position of the ALJ is that it began on April 10, 1991. (R. 16, 23, 80-82, 96, 173-76). The Social Security Administration initially denied plaintiff's claim on August 16, 1999. (R. 43-55). The Administration then granted plaintiff's request for reconsideration, and then affirmed its decision to deny his claim. (R. 177-85).

Plaintiff subsequently requested a hearing in front of an ALJ on March 5, 1999. (R. 55). ALJ Brown held a *de novo* hearing on June 24, 1999 at which plaintiff appeared with counsel and testified; the ALJ issued a written opinion on February 9, 2000, denying plaintiff's claim. (R. 12-17, 21-42). The ALJ concluded that plaintiff was not entitled to DIB or SSI because plaintiff had the residual functional capacity ("RFC")[4] to perform his past relevant work as a machine oiler and that his limitations only prevented him from working at his past job as a steel worker. (R. 12-17).

Plaintiff then requested a review of the ALJ's decision, which was denied. (R. 5-8). As such, the ALJ's decision stands as the final decision of the Commissioner. *See Zurawski v. Halter*, 245 F.3d 881; 20 C.F.R. § 404.981.

---

[3] Folliculitis is an infection of the hair follicles.
[4] "Residual Functional Capacity" is that which the claimant can do in spite of his physical and mental limitations. *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999).

II. Plaintiff's testimony

At the time of the June 24, 1999 hearing in front of the ALJ, Brewer was a literate fifty-four years old man with an eleventh grade education who lived with his mother and sister. (R. 26-27). He has a driver's license but has not driven since 1994 because of the pain in his arms. (R. 27)[5]. At the time of the hearing, plaintiff was five feet, eight inches tall, and weighed around 255 pounds. (R. 27). He had gained between fifty-five and sixty-five pounds since he last had a substantive job. From approximately 1970 to 1992, plaintiff worked in a steel mill, primarily on a blast furnace. (R. 28). However, pursuant to his request, he worked on the ore docks oiling machinery for four to five years until he was laid off when the steel mill was closed. (R. 28-29, 34). Brewer testified that he preferred oiling because the heat from the blasting furnace hurt his neck. (R. 28).

While working at the blast furnace in the steel mill, Brewer had to lift blow pipes which weighed between two-hundred and two-hundred-twenty-five pounds. (R. 33). However, when he worked at the ore docks, he only had to lift oil drums weighing one hundred and fifty pounds. (R. 33-34). At both places, he had to stand on his feet all day except for lunch. (R. 33).

Brewer's alleged disability manifests itself as folliculitis on the back of his neck, which he suffered from throughout his term at the steel mill. (R. 29). He testified that he treated it with creams and went on sick leave for about six

---

[5] Brewer's testimony is contradicted by his statement in a pain questionnaire he completed on October 8, 1998, in which he stated that he does in fact "drive whenever it[']s necessary." (R. 117). The questionnaire also indicates that he apparently performed considerable housework, including going to the store. (R. 117).

months out of each year because the blast furnace at the steel mill aggravated his condition. (R. 30). He once had to take an even longer leave, which lasted from October 1983 until January 1985. (R. 30). At the factory, he had to wear special asbestos coats that his doctor stated irritated the folliculitis. (R. 36). Since 1992, he has been to the hospital numerous times for his neck, all as an out-patient. (R. 30).

Plaintiff also testified that his physician, Dr. Lobato, diagnosed other medical problems including breathing disorders, high blood pressure, and problems sleeping. (R. 30-31, 36-37). He was given medicine for all three of these ailments[6] however he still had problems when he was around dust, fumes, and hot and cold weather. (R. 30-31, 36-37). Although Brewer took medication for his aliments, including Ibuprofen for general pain and headaches, he asserted that he could not return to work because his left arm hurt and he could not lift very much. (R. 32, 38-39). Brewer also testified that he was diagnosed with diabetes a few weeks before the hearing, but no further evidence of diabetes is in the record. (R. 37). At the time of the hearing plaintiff was scheduled to have an asbestos examination; the results later came back negative. (R. 41, 70).

Plaintiff testified that a few years after losing his job, he was no longer able to stand for extended periods of time because his feet would begin to swell, and could not sit all day because his feet would start to go numb. (R. 34). Although Brewer took medication for these problems, at the time of the hearing

---

[6] Plaintiff was taking Procardia for his high blood pressure, Prozac for his sleeping disorder, and he had stopped taking Primatine for his breathing problem. (R. 31, 35).

he still could not sit for more than a few hours at a time without having to get up and walk around. (R. 34). Further, he could only stand for an hour and a half and walk a block or two before his legs would get numb. (R. 36). This, he claimed, combined with his inability to tightly grip things made it difficult to get a job at a steel mill. (R. 32). Since losing his job at the steel mill in 1992, Brewer has only worked briefly at a job assisting a friend in rehabilitating buildings, during which time plaintiff handed tools to his friend. (R. 29).

At the time of the hearing, plaintiff testified that he started his day at around seven or eight in the morning and that it ended around nine or ten at night. (R. 32-33). His mother prepared his meals and did all of the shopping while he lay down to read or watch television. (R. 32). He had no hobbies and was not a member of any organizations or social groups; the longest trip he had taken since working in the steel mill was to go to downtown Chicago. (R. 32-33).

III. Plaintiff's medical examinations

In October 1997, Rene Martin Earles, M.D. evaluated plaintiff for his recurring folliculitis, and treated him for about a year thereafter. (R. 122-125, 143-157). The disease created pus bumps with weeping and oozing of infected material on the back of his neck and caused decreased movement of his neck. (R. 122, 147). Dr. Earles found this to be a painful condition causing hair loss and constituting a public health risk, which was aggravated by humidity and heat. (R. 147). Dr. Earles treated plaintiff with antibiotics, corticosteroids and analgesics, which appeared to have only limited success. (R. 147-156).

5

Although Dr. Earles found folliculitis to be a painful and limiting disease, he placed no restrictions on plaintiff's physical activity in October 1997. (R. 124). However, in a document that appears to be from May 1998, Dr. Earles stated first that plaintiff is "able to turn neck without difficulty" and then stated that "depending on [plaintiff's] activity, his condition can cause pain and irritation on movement of the neck, making some work projects difficult or impossible." (R. 145-47). On July 16, 1998, Dr. Earles and plaintiff discussed possible surgery, but apparently decided against it. (R. 150-51).

Plaintiff was next treated by Dario Lebajo, M.D. in October 1998 for hypertension, bronchitis/upper repertory infection and a chronic cough. (R. 162-72). Dr. Lebajo gave plaintiff several medications, including albuterol spray or syrup for his wheezing. (R. 169-72). Plaintiff had normal breath sounds throughout his treatment and his problems seemed to be under control. (R. 162-72).

In July 1999, plaintiff had a chest x-ray performed by Alvin Shonfeld, M.D. because he was a possible candidate for a class action asbestos claim. (R. 158-59). However, Dr. Shonfeld concluded that the "cardiac, hilar, and mediastinal silhouettes were unremarkable." (R. 158). Also, "the visualized lung parenchyma was free of infiltrates." (R. 158). Finally, he stated that no "pleural abnormalities were noted." (R. 158). Based on these findings, the law firm handling the action decided that plaintiff did not meet the qualifications to file an asbestos claim. (R. 159).

Plaintiff also had a consultative examination by M.A. Patil, M.D. on December 28, 1998. (R. 126-131). Plaintiff complained to Dr. Patil about his high blood pressure, recurrent dizzy spells, and fatigue in the mornings, however, plaintiff had no history of hospitalization for these ailments. (R. 126). Plaintiff also complained of "asthma with exertional dyspnea, recurrent wheezing and coughing spells." (R. 126). Plaintiff gave Dr. Patil no details of his asthma beyond the fact that he was using an inhaler. (R. 126). Further, Dr. Patil noted that plaintiff had no history of hospital visits for these problems either. (R. 126). After telling Dr. Patil about his skin problems, plaintiff then told him of his "recurrent, moderate, non-radiating pain in [his] left shoulder and arm with occasional swelling." (R. 126). However, Dr. Patil noted that plaintiff had no history of a fall or injury and that plaintiff provided no further details.

Dr. Patil stated that plaintiff had no allergies and denied using tobacco, alcohol, and drugs. (R. 127). Plaintiff's blood pressure was 132 over 82. His pulse and respiratory rates were normal. (R. 127). Dr. Patil next examined plaintiff's neck, and found, beyond the folliculitis, that plaintiff had no enlargement or nodularity of the thyroid gland and no lymphadenophy or carotid brutis. (R. 128).

Dr. Patil found small scars on plaintiff's chest but noted that the thorax was not deformed. (R. 128). There was "normal resonance" on percussion and breath sounds were only minimally diminished bilaterally. (128). He found no wheezing or basilar rales. (R. 128).

7

Dr. Patil also found that plaintiff's heart sounds were normal, there were no audible clicks or murmurs and "there was no palpable ventricular lift or pericardial heave." (R. 128). Dr. Patil also concluded that plaintiff had no deformities of the spine and no paravertibral tenderness or spasms. However, he did find a limit to plaintiff's range of motion. (R. 128).

Regarding plaintiff's extremities, Dr. Patil stated that plaintiff had no edema or calf tenderness, there "were no varicose veins, statsis dermatitis, pitting edema, deformity or swelling found" and that plaintiff had a normal gait. (R. 128). He then concluded that plaintiff's lung findings were minimal with no evidence of barotraumas, pneumonia or acute airway obstruction. (R. 129).

Regarding plaintiff's neck, Dr. Patil discovered no "acute vesicles, pustules or open lesions." (R. 129). He went on to state that plaintiff was consulting his dermatologist twice a month and was using creams to treat his neck problems. (R. 129).

Dr. Patil stated that plaintiff's range of motion of his shoulders were within normal limits and there was no evidence of acute arthritic process, recent trauma or neurovascular deficits, that his grip strength was five out of five and had no problems using his hands to pick small items up and write his name. (R. 129-30). He went on to find that plaintiff's gait was normal, that he could walk on his heels, toes, on one leg, and had no problems getting up from a chair. (R. 131). Plaintiff could squat, stoop, crouch, kneel and crawl and his hip movement was

adequate.[7] (R. 131). Plaintiff's knee extension was 130/150, his straight leg raising was 130/130 and his lower extremity muscle weakness was 5/5. (R. 131). Plaintiff's lumbar spine flexion-extension was 70/90 and his lateral flexion was 20/25. (R. 131). All of these results were close to normal range. (R. 129-131).

Further, Dr. Patil found that plaintiff weighed more than fifty percent more than his ideal weight. (R. 129). Dr. Patil completed his remarks by stating that "the patient was asked if all medical complaints had been addressed and he indicated affirmatively." (R. 129).

Stanley Burris, M.D., who filled out a physical residual functional capacity assessment on February 2, 1999, also examined plaintiff. (R. 132-39). Dr. Burris indicated on the RFC form – by checking a box – that plaintiff could only occasionally lift fifty pounds and could frequently lift twenty-five pounds.[8] (R. 133). Plaintiff could walk at least six hours out of an eight-hour workday and was "unlimited" in his ability to push and pull. (R. 133). Regarding plaintiff's environmental limitations, Dr. Burris placed no limitations on plaintiff except that he should avoid even moderate exposure to fumes, odors, dusts, gasses, poor ventilation, etc., because of his asthma. (R. 136). Dr. Burris went on to state that plaintiff's lungs were clear, there was no airway obstruction, that plaintiff used an inhaler, and that plaintiff had no emergency room hospital visits for this problem.

---

[7] Plaintiff's forward flexion was 85/100; his backward extension was 25/25; his abduction was 35/35; his adduction was 15/15. (R. 131).
[8] Occasionally means occurring from very little up to one third of an 8-hour workday (cumulative, not continuous). (R. 133). Frequently means occurring one-third to two-thirds of an 8-hour work day (cumulative, not continuous). (R. 133).

(R. 139). Dr. Burris found that his conclusions were not significantly different from the findings of the other doctors who treated plaintiff. (R. 138).

IV.  Vocational assessment

While the vocational expert did not testify in front of the ALJ, she listed her findings in a Vocational Assessment on February 2, 1999. (R. 118).  In the assessment, she stated that plaintiff's current RFC "indicates that the claimant retains the capacity for a full range of medium work[9] with the environmental limitation of avoiding exposure to fumes due to his asthma." (R. 118).  She further concluded that plaintiff's past work as a steel mill worker exceeded his current RFC and that other jobs must be considered. (R. 118).  She provided options such as an automotive detailer, blow-pit helper at a paper and pulp factory, and working with paper goods as a die mounter. (R. 118).

V.  Standard of Review

In reviewing the final decision of the Commissioner, this Court must accept as conclusive the findings of fact made by the ALJ if they are supported by substantial evidence. 42 U.S.C. § 405(g).  "Although a mere scintilla of proof will not suffice to uphold the Commissioner's findings, the standard of substantial evidence requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Diaz v. Charter*, 55 F.3d 300, 305 (7th Cir. 1995) quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1972).  If the record contains such support, the court must affirm the decision of the

---

[9] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing 25 pounds." 20 C.F.R. § 404.1567(d).

Commissioner unless she has made an error of law. *Veal v. Bowen*, 833 F.2d 693, 696 (7th Cir. 1987). This Court may not reweigh the evidence, re-evaluate the facts, or substitute its own judgment in determining whether a claimant is or is not disabled. *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner](or the [Commissioner's] designate, the ALJ)." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). Further, this Court may not reconsider an ALJ's credibility determination. *Prince v. Sullivan*, 933 F.2d 598, 601-02 (7th Cir. 1991). Thus, a plaintiff's proof must show that no reasonable person, based upon the record as a whole, could have found as the Commissioner did. *Rucker v. Shalala*, 894 F.Supp. 1209, 1213-14 (S.D. Ind. 1995).

VI. Analysis

Plaintiff contests the ALJ's determination that he was not under a "disability" as defined in the Social Security Act. Plaintiff claims that the ALJ did not properly weigh all of the evidence and his decision that plaintiff could return to work as a machine oiler was not supported by substantial evidence. He claims that the ALJ erred in his decision by disregarding the fact that plaintiff has not worked for over ten years and that when he did work he had to take time off because of his ailments. Also, plaintiff argues that the ALJ did not properly consider the fact that plaintiff has high blood pressure, hypertension, bronchial asthma/allergies, shoulder problems, severe depression and pain. Finally, he argues that the Secretary did not prove that plaintiff could find other gainful

11

activity. We remand this case back to the ALJ because when he made his decision, he did not consider Dr. Burris' opinion nor the vocational assessor's conclusions, both of which conflict with the ALJ's findings.

The ALJ must undertake a five-step process to determine whether an adult claimant is disabled under the Social Security Act, and thus unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental ailment. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual is considered disabled if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(2)(A), 1382c (a)(3)(B); 20 C.F.R. §§404.1520(e),(f), 416.920(e)(f). The standard five-step process that the ALJ must use in making his decision which is set forth in the regulations is as follows:

(1) Is the claimant presently employed?

(2) Is the claimant's impairment or combination of impairments severe?

(3) Do his or her impairments meet or exceed any of the specific impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1, which the Secretary acknowledges to be conclusively disabling?

(4) If the impairment has not been listed by the Secretary as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform his or her past relevant work?

(5) Is the claimant unable to perform any other work in the national economy given his or her age, education or work experience? *Ward v. Social Sec. Admin.*, No. 98 C 1905, 2000 WL 1029170 at *4

(N.D.Ill. Jul. 26, 2000) citing, Reg. § 416.920(a)-(f); *Young v. Secretary of Health & Human Servs.*, 957 F.3d 386, 389 (7th Cir. 1992).

Under the five-part sequential analysis, "an affirmative answer leads to either the next step, or on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, ends the inquiry and leads to a finding that the claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). At the administrative level, plaintiff bears the burden of proving he is disabled through step 4 of the analysis. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

In undertaking the five-step process, ALJ Brown first determined that Brewer had not engaged in substantial gainful employment since April 10, 1991 (step one). (R. 13). Next, the ALJ determined that the only severe impairment that plaintiff had was the folliculitis on the back of his neck because "it imposes more than a minimal limitation on the claimant's ability to engage in work-related activities." (R. 13). The ALJ determined that the other impairments were "minimal" and that none were listed in 20 C.F.R. pt. 404 Subpt. P., App. 1 (steps two and three). (R. 13, 16). The ALJ ended his analysis at step four because he found that plaintiff "retains the residual functional capacity to perform his past relevant work as an oiler and he cannot, therefore, be found disabled within the meaning of the Social Security Act." (R. 15).[10]

---

[10] If on remand the ALJ finds that plaintiff cannot return to his past work, then the Secretary must prove step five. *See Ward*, No. 98 C 1905, 2000 WL at *4.

This case is reversed and remanded because the ALJ failed to acknowledge in any way the RFC assessment made by Dr. Burris and the statements in the vocational assessment. (R. 9-17, 118, 132-39). "The decisions of the ALJ must be based on consideration of all relevant evidence." *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984). "All medical evidence that is credible, supported by clinical findings, and relevant to the question at hand should be considered and discussed by the ALJ." Id. The ALJ does not have to address in his opinion every piece of evidence, but she must "consider and discuss the important evidence." *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989).[11] By doing so, the ALJ must construct "an accurate and logical bridge from the evidence to her conclusion," *Clifford v. Apfel*, 227 F.3d 863, 867 (7th Cir. 2000), thus allowing the court to "track the ALJ's reasoning and assuring [us] that the ALJ considered the important evidence." *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). "While it is often impractical and fruitless for every document to be discussed separately, an ALJ may not select only the evidence that favors his ultimate conclusion." *Garfield*, 732 F.2d at 609.

The conclusion of Dr. Burris that plaintiff could only lift 50 pounds is relevant and important because plaintiff testified that as an oiler he had to lift a one hundred and fifty pound drum of oil to grease the machinery. (R. 33-34, 133). If Dr. Burris' assessment is correct, and Brewer's job description is correct, it

---

[11] Statements made by medical sources that a claimant is "unable to work" are not dispositive and do not direct the determination or decision of disability. *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995); 20 C.F.R. §§ 404. 1527(e)(3); 416.927(e)(3); SSR 96-5p.

would mean that plaintiff could not return to his past relevant work as a machine oiler.

Dr. Burris also concluded that plaintiff should avoid even moderate exposure to fumes, odors, dusts, gasses, poor ventilation etc. (R. 136). Plaintiff argues that this prohibits him from working as an oiler, and therefore Dr. Burris' determination must also be addressed by the ALJ.

Further, the vocational assessor's conclusions might also contradict Brewer's ability to return as an oiler. (R. 118). In general, conclusions of vocational experts provide "substantial evidence." *Schmidt v. Apfel*, 201 F.3d 970, 973 (7th Cir. 2000). The vocational assessment states that "the job duties of [a steel mill worker] exceed those of the current RFC. Therefore, other jobs must be considered." (R. 118). The vocational assessor did not distinguish between the different jobs Brewer had at the steel mill, so it is possible to conclude that she meant all of his past jobs exceed the current RFC. (R. 118). This decision is for the ALJ to make on remand. The vocational assessor did state that plaintiff could only perform medium work, and if plaintiff's testimony that he has to lift 150 pound drums as an oiler is accepted as true by the ALJ, then that job would not be considered medium work. (R. 33-34, 118). 20 C.F.R. § 404.1567(d). The vocational assessor also stated that plaintiff had the "environmental limitation of avoiding exposure to fumes do to his asthma." (R. 118). This also must be considered by the ALJ on remand because working as an oiler may involve exposure to these fumes.

Plaintiff also argues that the ALJ's conclusion that plaintiff could return to work as a machine oiler is unsupported because plaintiff had been out of work for ten years and when he did work, he had to take time off, and because of his high blood pressure, hypertension, bronchial asthma/allergies, shoulder problems, severe depression, allergies and pain. Finally, he argues that the Secretary did not prove that plaintiff could find other gainful activity. We disagree with these arguments.

The ALJ did in fact discuss all of these problems in his opinion except for plaintiff's statements regarding his depression and time taken off from past work. (R. 13-17). Plaintiff bears the burden to prove that he cannot work as a machine oiler. *Butera v. Apfel*, 173 F.3d 1049, 1054 (7th Cir. 1999). We could find no reference to depression in the entire record, including within plaintiff's testimony, so there is no need for a "minimal articulation of the ALJ's assessment" of this matter. *Taylor v. Schweiker*, 739 F.2d 1240, 1244 (7th Cir. 1984); Zblewski v. Schweiker, 732 F.2d 75, 79 (7th Cir. 1984). Regarding plaintiff's time off from work, he testified that the reason for his ailments was that the heat from the blast furnace hurt his neck. (R. 30). If plaintiff was able to return to work as an oiler, he would not be working near a blast furnace, thus eliminating this issue. Again, the ALJ does not need to address every piece of evidence, but only the important evidence. Anderson 868 F.2d at 924. Given the record, the ALJ was justified in determining that the plaintiff's depression and time off work were not important.

The judgment of the ALJ is hereby reversed and remanded for further proceedings consistent with this opinion.

ENTER:

MICHAEL T. MASON
United States Magistrate Judge

Dated:   July 2, 2002